UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRY REEDER #512651,

        Plaintiff,

v.

UNKNOWN BENOIT,

        Defendant.
_____/

Case No. 2:23-cv-242

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses Defendant's motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies with respect to the claims in this case. (ECF No. 18.) Plaintiff has not responded to the Defendant's motion.

State prisoner – Terry Reeder – filed a verified complaint under 42 U.S.C. § 1983 alleging that the Defendant violated his rights under the Prison Rape Elimination Act (PREA), as well as the Eighth and Fourteenth Amendments while he was incarcerated at Chippewa Correctional Facility (URF). (ECF No. 1.)

In a September 10, 2024 Opinion, this Court dismissed Reeder's Fourteenth Amendment substantive due process claims as well as any potential claim for violation of PREA. (ECF No. 12, PageID.52.) However, the Court found that Reeder's complaint could be read to assert a First Amendment retaliation claim and an Eighth

Amendment sexual assault claim. (*Id.*, PageID.50, 53.) At this time, those claims remain in the case.

Reeder asserts that on November 16, 2022, Corrections Officer (CO) Benoit was doing rounds in the Marquette Housing Unit. (ECF No. 1, PageID.2.) Benoit allegedly stopped, opened Reeder's cell door, and observed Reeder as he masturbated. (*Id.*) Benoit stated, "[T]hat's all you got," and wrote Reeder a misconduct ticket for unauthorized phone use. (*Id.*)

On November 17, 2022, Reeder says that Benoit again entered his cell. (*Id.*) Reeder states that this time, Benoit "grabbed [his] penis and asked to see [his] ass." (*Id.*) Reeder told Benoit, "I don't play like that," before he "pulled [his] penis from [Benoit's] hand." (*Id.*) Benoit allegedly told Reeder he could "make [his] phone ticket go away." Reeder refused and told him to exit the open cell door. Benoit stated that Reeder would "regret this." (*Id.*)

On November 22, 2022, Reeder spoke with his therapist regarding "the incident" and was referred to the PREA counselor. (*Id.*) The next day, Reeder again expressed his distress to his therapist and stated that he "could not cope with what Officer Benoit had done to [him] on November 17." (*Id.*, PageID.3.) Reeder then consulted with Nurse Mast, who provided him pain medication for residual "soreness" in his genitals. (*Id.*)

Benoit made rounds in Marquette Housing Unit again on November 24, 2022. (*Id.*) When Benoit passed Reeder's cell, number 344, he allegedly stated, "If that

2

d[*]ck sucker in 344 come out he's going to the hole." (*Id.*)  Reeder states that he stayed in his cell because of the threat.

On December 4, 2022, Reeder attempted to speak with the PREA coordinator about Benoit's alleged retaliation against him for filing a PREA complaint.  (*Id.*) Reeder states that the coordinator refused to talk with him.  (*Id.*)

On December 8 and 9, 2022, Reeder said that Benoit again made rounds in Marquette Housing Unit.  (*Id.*)  Reeder states that during those rounds, Benoit allegedly taunted him by telling him to "get that nice [*]ss over here" and that Benoit "love[s] a nice [*]ss on a man."  (*Id.*)  Reeder alleges that after a shower on December 12, 2022, Benoit asked him if he had "cleaned [his] [*]ss good for him" in front of other prisoners. (*Id.*)

Reeder says that he was not removed from Marquette Housing Unit until January 27, 2023. (*Id.*)  On February 6, 2023, Reeder says that Benoit worked first shift in the Unit.  (*Id.*)  Reeder states that during that time, he was on "Toplock" (a form of punishment in which a prisoner loses certain privileges) and was not permitted to use the restroom without staff authorization. (*Id.*)  When Benoit made his rounds, Reeder says that both he and his cellmate asked to use the restroom.  (*Id.*) Benoit allegedly permitted Reeder's cellmate to use the restroom, but did not allow Reeder to go along.  (*Id.*)  Benoit allegedly told Reeder, "You can't get away from me we are lovers for life."  (*Id.*)  Instead, Reeder says that he had to wait for another CO to make his rounds to use the restroom.

Reeder's claims against Benoit are summarized in the table below:

| Claim | Allegation(s) | Date(s) |
|---|---|---|
| 1 | 8th Amendment sexual assault. Reeder alleges that Benoit observed him masturbating and taunted him. The next day, Reeder alleges Benoit entered his cell, grabbed his genitals, and asked to see his butt. | Nov. 16/17, 2022 |
| 2 | 8th Amendment sexual assault. Reeder alleges that Benoit verbally taunted and harassed him in a sexualized manner. | Nov. 24, 2022; Dec. 8, 9, 12, 2022; Feb. 6, 2023 |
| 3 | 1st Amendment retaliation. Reeder alleges that after he complained to PREA personnel, Benoit threatened to have Reeder thrown into "the hole", continued to sexually taunt him, and refused his request to use the bathroom while Reeder was on "toplock." | Dec. 8, 9, 12, 2022; Feb. 6, 2023 |

Reeder's claimed attempts to exhaust his administrative remedies are listed in the table below:

| Claim | Attempted Administrative Remedy | Date(s) Filed | Citation |
|---|---|---|---|
| 1 | PREA Complaint concerning Nov. 17 | Nov. 20, 2022 | ECF No. 1, PageID.4; ECF No. 19-5, PageID.105 |
|   | PREA Complaint concerning Nov. 17 | Nov. 24, 2022 | ECF No. 1, PageID.4 |
| 2 | Report to PREA Coordinator | Nov. 24, 2022 | ECF No. 1, PageID.4 |
|   | PREA Complaint concerning Dec. 12 | Dec. 13, 2022 | ECF No. 1, PageID.4 |
| 3 | PREA Complaint concerning Dec. 12 | Dec. 13, 2022 | ECF No. 1, PageID.4 |

Defendant Benoit moves for summary judgment. (ECF No. 18.) Benoit argues that Reeder only properly exhausted his claim related to events on November 17, 2022 (Claim 1). (*Id.*, PageID.75−76.) Benoit asserts that Reeder's other claims (Claim 2 and Claim 3) should be dismissed because the Plaintiff failed to properly exhaust his administrative remedies for any other claim against Benoit. (*Id.*)

In the opinion of the undersigned, there remains a genuine dispute of material fact as to whether Reeder properly exhausted his Eighth Amendment sexual assault

4

claims related to incidents on November 16, November 24, and December 12, 2022 and his First Amendment retaliation claim related to December 12, 2022. As noted above, Defendant Benoit acknowledges that Reeder properly exhausted his sexual assault claim related to the events on November 17, 2022. (ECF No. 18, PageID.75−76.) Thus, it is respectfully recommended that the Court deny Benoit's motion for summary judgment with respect to Reeder's Eighth and First Amendment claims related to events on November 16, November 24, and December 12, 2022. These claims, as well as the claims based on events on November 17, should remain in the case.

However, there remains no genuine dispute of material fact as to whether Reeder properly exhausted his Eighth Amendment sexual assault claims related to December 8 and 9, 2022 and February 6, 2023, or his First Amendment retaliation claim related to the same dates. The record indicates that Reeder did not exhaust these claims. Thus, it is respectfully recommended that the Court grant Benoit's motion with respect to Reeder's claims related to events on December 8 and 9, 2022, and February 6, 2023.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212–16 (2007). "[W]here the moving party has the burden -- the plaintiff

---

[1] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91

(2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.

In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in

8

Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019).  The Grievance Policy provides a three-step reporting process through which prisoners are to report violations of MDOC policy. *See id.*

However, the Grievance Policy provides that it does not apply to grievances "regarding sexual abuse" and that such grievances shall be reported under the policy covering "Sexual Abuse and Sexual Harassment of Prisoners – Prison Rape Elimination Act (PREA)," Policy Directive No. 03.03.140 (the "PREA Policy"):

> Grievances filed regarding sexual abuse, including those filed by a third party, shall not be processed as grievances under this policy but shall be reported in accordance with PD 03.03.140 "Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners." Any grievance submitted under this policy that contains an allegation of sexual abuse shall be copied by the Grievance Coordinator and forwarded to the PREA Coordinator. The original grievance shall be returned to the prisoner.

(PD 03.02.130, ¶ D.)

The PREA Policy "details the [MDOC's] zero-tolerance standard toward all forms of sexual abuse and sexual harassment involving prisoners and outlines the [MDOC's] approach to preventing, detecting, and responding to such conduct." (PREA Policy, ECF No. 19-4, PageID.92.)  Under the PREA Policy, sexual abuse includes "[s]exual abuse of a prisoner by an employee." (*Id.*,¶ Q, PageID.93.)

The PREA Policy's reporting procedure is different from the reporting requirements under the Grievance Policy. Under the PREA Policy, prisoners can make oral or written reports, "in any manner" (*Id.*,¶ UU, PageID.98) and their allegations will be investigated. (*Id.*, ¶¶ XX, PageID.98.)  The PREA Policy clarifies that the Grievance Policy does not apply to allegations "regarding sexual abuse":

9

> The MDOC has eliminated the administrative grievance procedure for addressing prisoner grievances regarding sexual abuse. If prisoners utilize the prisoner grievance system to report an allegation of sexual abuse, the Grievance Coordinator shall forward the sexual abuse allegation to the facility PREA Coordinator for further handling in accordance with this policy, and the sexual abuse grievance shall be removed from the grievance process. The prisoner shall be notified in writing that this has occurred.

(*Id.* at ¶ VV, PageID.248; emphasis added.)

The PREA Policy still permits, but does not require, prisoners to use the Grievance Policy to report sexual harassment or retaliation. (*See id.*, ¶ WW.) The PREA Policy does not contain any provisions concerning the exhaustion of remedies.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

10

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

**IV. Analysis**

CO Benoit argues that Reeder failed to properly exhaust administrative remedies for claims <u>not</u> arising out of the November 17, 2022 incident. (ECF No. 19, PageID.74.) Although Reeder did not respond to Benoit's motion for summary judgment, Reeder addressed exhaustion in his verified complaint. (ECF No. 1, PageID.4.) Reeder asserts that he exhausted his claim (1) by filing a complaint with the PREA coordinator on November 20 and November 24, 2022 regarding the

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

11

November 17, 2022 incident, and (2) by filing a complaint with the PREA coordinator on December 13, 2022 regarding the December 12, 2022 incident. (*Id.*)

Reeder asserts that Defendant Benoit sexually harassed him on November 16, November 24, December 8, December 9, and December 12, 2022, as well as on February 6, 2023. (*Id.*, PageID.2–3.) Reeder also asserts that that Benoit sexually assaulted him once: on November 17, 2022. (ECF No. 1, PageID.2–3.) Reeder's allegations fall within scope of MDOC PD 03.03.140 (effective April 5, 2021), the procedure by which prisoners report sexual abuse and sexual harassment.

Reeder did not pursue any Step I grievances, Step II appeals, or Step III appeals associated with his claims of sexual harassment or sexual assault by Benoit. (ECF No. 1, PageID.4; ECF No. 19-3, PageID.90.)

Reeder states in his verified complaint that he submitted PREA complaints regarding the November 17, 2022 incident on November 20, and again on November 24, 2022. (ECF No. 1, PageID.4.) The Administrative Investigations Management database reflects that Reeder filed one PREA complaint regarding the November 17 incident on November 20, 2022. (ECF No. 19-5, PageID.105 (Affidavit of Jaquine Castillo, Litigation Specialist at MDOC's Office of Legal Affairs).)

Reeder also asserts in his verified complaint that he filed a PREA complaint on December 13, 2022 regarding the incident on December 12, 2022. (ECF No. 1, PageID.4.) Reeder does not address whether he filed complaints related to incidents other than November 17. (*Id.*) Benoit asserts that because Reeder failed to file PREA

12

complaints or grievances unrelated to November 17, Reeder has failed to properly exhaust his administrative remedies. (ECF No. 19, PageID.75–76.)

The allegations in Reeder's verified complaint, when read together, suggest a pattern of related sexual harassment and abuse by an MDOC employee. These allegations fall under the PREA Policy. PD 03.03.140,¶ Q. Under the PREA Policy, inmates may report alleged instances of harassment or abuse "in any manner." *Id.*, ¶ UU. Modes of reporting harassment or abuse include, *but are not limited to*: (1) private reports to supervisory employees; (2) the MDOC sexual abuse hotline; (3) completing a Sexual Abuse/Sexual Harassment Complaint form on the MDOC website; (4) contacting a PREA Manager; (5) contacting Internal Affairs; (6) contacting an external reporting agency; or (7) through an anonymous report. *Id.*

In his verified complaint, Reeder states that he filed a complaint regarding the November 17, 2022 incident on both November 20 and November 24. (ECF No. 1, PageID.4.) On November 22, 2022, Reeder says that he "talked about the incident" with his therapist, but does not specify whether the conversation was about the incident on November 16 or November 17, 2022. (*Id.*, PageID.2.) On November 23, 2022, Reeder states that he spoke to his therapist specifically about the November 17, 2022 incident. (*Id.*, PageID.3.) Reeder says that on December 4, 2022, he tried to speak with the PREA Coordinator about the alleged November incidents, but states that the Coordinator refused to speak with him. (*Id.*) Reeder states that he filed a complaint with the Grievance Coordinator regarding the December 12, 2022 incident

13

on December 13, 2022 and that he received a Memorandum stating the PREA complaint had been referred to the PREA Coordinator. (*Id.*)

Reeder's assertions that he spoke with his therapist, attempted to speak with the PREA coordinator, and spoke with the Grievance Coordinator each constitute a manner of reporting sexual harassment or abuse that conform with the PREA Policy. *See* PD 03.03.140,¶ UU. Although there is no record of Reeder's alleged reports on November 22, December 4, or December 12, 2022, his statement that he did so in his verified complaint is sufficient to create a genuine dispute of material fact. Thus, in the opinion of the undersigned, there remains a genuine dispute of material fact as to whether Reeder properly exhausted his both Eighth Amendment sexual assault claims related to incidents on November 16, November 24, and December 12, 2022 and his First Amendment retaliation claim related to December 12, 2022. And Benoit acknowledges that Reeder properly exhausted his sexual assault claim related to the events on November 17, 2022. (ECF No. 18, PageID.75−76.) Thus, it is respectfully recommended that the Court deny Benoit's motion for summary judgment with respect to Reeder's Eighth and First Amendment claims related to events on November 16, November 24, and December 12, 2022. These claims, as well as the claims based on events on November 17, should remain in the case.

In contrast, Reeder fails to assert that he attempted to report harassment or abuse that occurred on December 8 and 9, 2022 and February 6, 2023. Reeder does not claim that he reported Benoit's alleged conduct, that he spoke to anyone on MDOC staff, or that he filed an anonymous complaint. There is no record of Reeder filing a

14

complaint related to the alleged conduct on those dates. Thus, in the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Reeder properly exhausted his Eighth Amendment sexual assault claims related to December 8 and 9, 2022 and February 6, 2023 or his First Amendment retaliation claim related to the same dates. The record indicates that Reeder did not exhaust these claims. It is respectfully recommended that the Court grant Benoit's motion with respect to Reeder's claims related to December 8 and 9, 2022, and February 6, 2023.

## V. Recommendation

In summary, the undersigned respectfully recommends that this Court **grant** the Defendant's motion for summary judgment as to:

1. Reeder's Eighth Amendment sexual assault claims related to December 8 and December 9, 2022;

2. Reeder's Eighth Amendment sexual assault claims related to February 6, 2023;

3. Reeder's First Amendment retaliation claim related to December 8 and 9, 2022 and February 6, 2023.

The undersigned respectfully recommends that the Court **deny** the Defendant's motion for summary judgment as to:

1. Reeder's Eighth Amendment sexual assault claims related to incidents on November 16, November 24, and December 12, 2022;

   2. Reeder's First Amendment retaliation claim related to December 12, 2022.

If the Court adopts these recommendations, then Reeder's Eighth and First Amendment claims related to events on November 16, November 17, November 24, and December 12, 2022 will remain in the case.


Dated:   March 27, 2025                    /s/ *Maarten Vermaat*
                                           MAARTEN VERMAAT
                                           U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).